FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 18, 2022
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 28

Robyn Krile,                                Plaintiff and Appellant

       v.

Julie Lawyer, in her official and individual

capacity as Assistant Burleigh County

State's Attorney,                           Defendant and Appellee

## No. 20210138

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Troy J. LeFevre, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Lynn M. Boughey, Mandan, ND, for plaintiff and appellant.

Bradley N. Wiederholt (argued) and Randall J. Bakke (on brief), Special Assistant State's Attorneys for Burleigh County, Bismarck, ND, for defendant and appellee.

**VandeWalle, Justice.**

[¶1]   Robyn Krile appealed from a judgment dismissing her defamation claims against Julie Lawyer. Krile argues the district court erred by failing to consider all of the materials the parties submitted and thereby treat the motion to dismiss as a motion for summary judgment. She also argues the court erred in dismissing her defamation claims. We affirm, concluding Krile failed to plead a valid claim for defamation.

I

[¶2]   On February 8, 2017, Assistant State's Attorney Julie Lawyer[1] received an anonymous letter concerning a Bismarck police officer's destruction of evidence. Lawyer reviewed the files of all active Bismarck police personnel. Lawyer asserted her decision to review the files was to ensure the state's attorney's office was fulfilling its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). "The *Brady-Giglio* line of cases requires the government to disclose to the defendant exculpatory material and impeachment evidence." *Krile v. Lawyer*, 2020 ND 176, ¶ 2, 947 N.W.2d 366 (quoting *State v. Russell*, 2016 ND 208, ¶ 6, 886 N.W.2d 677).

[¶3]   During Lawyer's investigation, she reviewed the file of Sergeant Robyn Krile and concluded Krile had made false statements as a Bismarck police officer. On March 22, 2017, Lawyer sent a letter ("*Giglio* letter") to Bismarck Police Chief Dan Donlin summarizing her investigation into Krile's file and stating her belief that Krile had made false statements as a Bismarck police officer. Lawyer informed Chief Donlin that such information would have to be disclosed to the defense in cases in which Krile was involved pursuant to *Giglio* and, as a result, the Burleigh County State's Attorney's Office would no longer use Krile as a witness in its cases. The Bismarck Police Department

---

[1] Lawyer has since been elected as Burleigh County State's Attorney.

terminated Krile's employment because the Burleigh County State's Attorney's Office was no longer willing to use Krile as a witness.

[¶4] Krile filed a complaint with the Department of Labor and Human Rights claiming the Bismarck Police Department discriminated against her based on race and sex. As part of the Department of Labor's investigation, the Bismarck Police Department submitted two affidavits of Lawyer in which she explained the circumstances and her reasoning for issuing the *Giglio* letter. The Department of Labor concluded the Bismarck Police Department did not unlawfully discriminate against Krile.

[¶5] Lincoln Police Chief Joe Gibbs contacted Lawyer about potentially hiring Krile after her employment with the Bismarck Police Department was terminated. Lawyer disclosed the *Giglio* letter to Chief Gibbs.

[¶6] In March 2019, Krile sued Lawyer in her official and individual capacity for defamation. The complaint alleged Lawyer defamed Krile by publishing the *Giglio* letter to the Bismarck Police Department, specifically Chief Donlin, and by publishing her affidavits to the Department of Labor in the course of its investigation. The complaint also alleged Lawyer defamed Krile by publishing the *Giglio* letter to the Peace Officer Standards and Training (POST) Board and by publishing the *Giglio* letter and related information to Krile's prospective employers.

[¶7] Lawyer moved to dismiss under N.D.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Krile opposed the motion. After a hearing, the district court granted Lawyer's motion to dismiss. Relying solely on the *Giglio* letter and Lawyer's affidavits submitted to the Department of Labor, the district court determined Lawyer's publication of the *Giglio* letter and her affidavits were absolutely privileged communications because Lawyer was acting in her official capacity as a prosecutor when she disclosed the alleged defamatory materials. The district court did not explicitly address Lawyer's disclosure of the *Giglio* letter to Chief Gibbs.

[¶8] Krile appealed, and this Court affirmed in part, reversed in part, and remanded. *Krile*, 2020 ND 176, ¶ 40. We affirmed the dismissal of the

2

defamation claim related to the disclosure of the *Giglio* letter and Lawyer's affidavits to the Department of Labor because the communications were absolutely privileged under N.D.C.C. § 14-02-05(2). *Krile*, at ¶ 40. We reversed the dismissal of the defamation claim for the disclosure of the *Giglio* letter to Chief Donlin, holding the communication to Chief Donlin was not an absolutely privileged communication, but it may be entitled to a qualified privilege under N.D.C.C. § 14-02-05(3). *Krile*, at ¶ 38. We also reversed the dismissal of the defamation claim related to disclosure of the *Giglio* letter to the POST Board because we were unable to determine from the record whether the alleged disclosure was a privileged communication. *Id.* at ¶ 40. We said the district court may decide on remand whether the communications to Chief Donlin and the POST Board were entitled to a qualified privilege. *Id.* We also noted the district court had not previously addressed Krile's defamation claims related to the *Giglio* letter to Chief Gibbs and instructed the court to address the issue on remand. *Id.*

[¶9] On remand, Lawyer renewed her motion to dismiss under N.D.R.Civ.P. 12(b)(6). Both parties filed various materials in support of or in opposition to the motion. After a hearing, the district court dismissed Krile's defamation claims ruling all of the claims are barred by either absolute or qualified privilege under N.D.C.C. § 14-02-05 and are subject to dismissal under Rule 12(b)(6).

II

[¶10] Krile argues the district court erred by failing to consider all of the materials the parties submitted and thereby treat Lawyer's motion to dismiss as a motion for summary judgment.

[¶11] A party may move for dismissal under N.D.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Under N.D.R.Civ.P. 12(d), "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The district court may consider the pleadings, materials embraced by the pleadings, and materials that are part of the public record in deciding a motion to dismiss under N.D.R.Civ.P. 12(b)(6).

3

*Krile*, 2020 ND 176, ¶ 13. Materials that are embraced by the pleadings may be considered without converting the motion to a Rule 56 motion because "a plaintiff ought not be permitted to defeat a motion to dismiss through the artifice of not attaching the critical document to the complaint." *Nelson v. McAlester Fuel Co.*, 2017 ND 49, ¶ 22, 891 N.W.2d 126 (quoting *Riemers v. State*, 2007 ND App 4, ¶ 8, 739 N.W.2d 248).

[¶12] We have said a motion to dismiss should be treated as a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." *Podrygula v. Bray*, 2014 ND 226, ¶ 7, 856 N.W.2d 791 (quoting *Livingood v. Meece*, 477 N.W.2d 183, 187 (N.D. 1991)). However, a motion to dismiss under N.D.R.Civ.P. 12(b)(6) does not automatically convert to a motion for summary judgment when a party submits additional materials outside of the pleadings, and the district court has discretion in deciding whether to exclude the additional materials or convert the motion into a motion for summary judgment. *See* N.D.R.Civ.P. 12(d) (indicating the court may exclude submitted materials that are outside the pleadings); *Casazza v. Kiser*, 313 F.3d 414, 417-18 (8th Cir. 2002) (holding the court properly considered the motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) when there was no evidence the court relied on a party's affidavit in granting the motion); *Skyberg v. United Food and Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n.2 (8th Cir. 1993) (stating the district court has wide discretion in electing to consider matters outside the pleadings); *Aamot v. Kassel*, 1 F.3d 441, 444-45 (6th Cir. 1993) (holding language of Rule 12(b) is directed at the court and conversion of a motion to dismiss into a motion for summary judgment takes place at the discretion of the court when the court decides not to exclude extraneous matters).

[¶13] Here, the parties submitted numerous documents in support of or in opposition to the motion to dismiss. The district court stated it would not consider most of the documents because those documents were not "embraced by the pleadings" and they were not a part of the public record. The court stated it would consider the complaint, the *Giglio* letter, Lawyer's affidavits to the Department of Labor, the public notice of Lincoln City Council meeting minutes dated August 6, 2020, Lawyer's and Krile's affidavits filed publicly in

4

a related federal case, and certain documents provided to the POST Board. The court found these documents were either a part of the public record or embraced by the pleadings. The court stated it would not consider the parties' remaining documents.

[¶14] We conclude the district court did not abuse its discretion by excluding the additional materials and declining to convert Lawyer's Rule 12(b)(6) motion to dismiss to a motion for summary judgment.

III

[¶15] Krile argues the district court erred in dismissing her defamation claims and concluding as a matter of law that it is impossible for her to prove a claim upon which relief can be granted. She contends there are genuine issues of material fact in dispute, the court did not consider the materials in the light most favorable to her, and therefore it was improper to dismiss her claims.

[¶16] In an appeal from a motion to dismiss under N.D.R.Civ.P. 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and well-pleaded allegations are accepted as true. *Krile*, 2020 ND 176, ¶ 15. "A court's scrutiny of pleadings should be deferential to the plaintiff, unless it is clear there are no provable facts entitling the plaintiff to relief." *Schmitz v. N.D. State Bd. of Chiropractic Exam'rs*, 2021 ND 73, ¶ 6, 958 N.W.2d 496 (quoting *Rose v. United Equitable Ins. Co.*, 2001 ND 154, ¶ 10, 632 N.W.2d 429). Rule 12(b)(6) motions are viewed with disfavor and should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted. *Schmitz*, at ¶ 6. The district court's decision will be reviewed de novo on appeal. *Krile*, at ¶ 15. The court's decision dismissing the complaint will be affirmed "if we cannot discern a potential for proof to support it." *Id.* (quoting *Nelson*, 2017 ND 49, ¶ 20).

[¶17] Krile's complaint alleged four separate defamation claims. Krile claimed Lawyer defamed her by writing and publishing the *Giglio* letter to Bismarck Police Chief Donlin and by publishing the *Giglio* letter and related information to the Department of Labor, the POST Board, and Lincoln Police Chief Gibbs. We previously held the disclosure of the *Giglio* letter and the submission of

5

Lawyer's affidavits to the Department of Labor were absolutely privileged communications and the defamation claim related to the Department of Labor was properly dismissed. *Krile*, 2020 ND 176, ¶ 40. In this appeal, Krile argues the district court erred in dismissing the defamation claims related to Lawyer's communications with Chief Donlin and Chief Gibbs. She does not argue the district court erred in dismissing her claims related to the POST Board, and therefore our review is limited to reviewing the district court's decision to dismiss the defamation claims related to publication of the *Giglio* letter to Chief Donlin and Chief Gibbs.

[¶18] "There is no liability for defamatory statements that are privileged." *Krile*, 2020 ND 176, ¶ 18 (quoting *Richmond v. Nodland*, 552 N.W.2d 586, 588 (N.D. 1996)). A privileged communication may be either absolute or qualified. *Krile*, at ¶ 19. There is no liability for a defamatory statement that is absolutely privileged, even if there is evidence of actual malice. *Id.* However, a qualified privilege "may be abused and does not provide absolute immunity from liability for defamation." *Id.* (quoting *Richmond*, 552 N.W.2d at 588). Whether privilege applies is a question of law. *Krile*, at ¶ 19. Communications under N.D.C.C. § 14-02-05(3) and (4) receive a qualified privilege. *Krile*, at ¶ 36.

[¶19] In the prior appeal we held Lawyer's communication to Chief Donlin was not absolutely privileged but may be entitled to a qualified privilege under N.D.C.C. § 14-02-05(3). *Krile*, 2020 ND 176, ¶ 38. On remand, the district court concluded the communications to Chief Donlin and Chief Gibbs were both entitled to a qualified privilege under N.D.C.C. § 14-02-05(3).

[¶20] Communications are qualifiedly privileged under N.D.C.C. § 14-02-05(3), when made "[i]n a communication, without malice, to a person interested therein by one who also is interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." Malice is not inferred from the communication or publication when the communication is qualifiedly privileged under N.D.C.C. § 14-02-05(3). N.D.C.C. § 14-02-05.

6

[¶21] "The analysis of a qualified privilege requires a two-step process to determine: (1) if a communication's attending circumstances necessitate a qualified privilege; and (2) if so, whether the privilege was abused." *Krile*, 2020 ND 176, ¶ 36 (quoting *Khokha v. Shahin*, 2009 ND 110, ¶ 26, 767 N.W.2d 159). "A qualified privilege is abused if statements are made with actual malice, without reasonable grounds for believing them to be true, on a subject matter irrelevant to the common interest or duty." *Krile*, at ¶ 37 (quoting *Fish v. Dockter*, 2003 ND 185, ¶ 13, 671 N.W.2d 819). "Actual malice depends on scienter and requires proof that a statement was made with malice in fact, ill-will, or wrongful motive." *Id*. It is generally referred to as the common law standard of malice and other courts have recognized it may be shown by evidence of hostility, threats, improper motive, or an intent to causelessly and wantonly injure the plaintiff. *See Dolgencorp, LLC v. Spence*, 224 So.3d 173, 186-87 (Ala. 2016); *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019). We have further explained:

> Actual malice is not inferred from the communication itself; the plaintiff must prove actual malice and abuse of the privilege. Generally, actual malice and abuse of a qualified privilege are questions of fact. However, where the facts and inferences are such that reasonable minds could not differ, factual issues are questions of law.

*Krile*, at ¶ 37 (quotations and citations omitted).

A

[¶22] In this context, the actual malice a plaintiff must prove to defeat a qualified privilege is not the same as the constitutional standard of actual malice that a plaintiff must prove when the person is a public figure bringing a defamation claim. *See Riemers v. Mahar*, 2008 ND 95, ¶ 19, 748 N.W.2d 714. A public figure is required to prove the allegedly defamatory statements are false and made with actual malice. *Id.*; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). In those cases, actual malice has been defined as "knowledge that the statements are false or that the statements were made with reckless disregard for whether they were false." *Riemers*, at ¶ 19; *see also New York Times*, at 279-80. The actual malice standard used in public figure

7

cases is not the same and should not be confused with the actual malice standard used to defeat a qualified privilege. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (explaining "Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."). To defeat a qualified privilege under N.D.C.C. § 14-02-05(3), the plaintiff must prove actual malice by showing the statement was made with malice in fact, ill will, or wrongful motive.

[¶23] On remand, the district court concluded the publication of the *Giglio* letter to Chief Donlin was entitled to a qualified privilege. The court also determined Krile did not sufficiently allege the qualified privilege was abused. The court determined nothing in the letter or affidavit suggested malice by Lawyer in sending the letter to Chief Donlin, Krile's complaint generally asserted Lawyer acted maliciously but did not set out any factual matters that would support a showing of malice, Krile's malice allegations were formulaic and conclusory and were not "well-pleaded," and there was no indication in the pleadings or in the material embraced by the pleadings of any abuse of the privilege. The court concluded Krile failed to state a claim upon which relief could be granted and dismissed the defamation claim for the publication of the *Giglio* letter to Chief Donlin.

[¶24] A communication is entitled to a qualified privilege under N.D.C.C. § 14-02-05(3) when the communication is made without malice to a person interested therein by a person who is also interested. The attending circumstances of the communication are not in dispute. We previously held Lawyer's decision to *Giglio* impair[2] Krile and no longer use her as a witness was an activity intimately associated with the judicial phase of the criminal process and was entitled to absolute privilege or immunity. *Krile*, 2020 ND 176, ¶ 30. As Krile's superior, Chief Donlin had an interest in Lawyer's decision to

---

[2] "A prosecutor's decision not to allow a law enforcement officer to testify in criminal trials because the prosecutor would be required to disclose to the defense existing information about the officer's prior misconduct or other grounds to attack the officer's credibility is often referred to as '*Giglio* impairment' of the officer." *Krile*, 2020 ND 176, ¶ 5.

8

*Giglio* impair Krile and the reasoning for the decision. The communication was one that was made by a person interested in the subject matter to another person who was also interested in the subject matter. We conclude the communication was entitled to a qualified privilege under N.D.C.C. § 14-02-05(3).

[¶25] Krile claims qualified privilege does not apply because any qualified privilege was abused and she sufficiently alleged Lawyer acted with malice. Krile argues she demonstrated malice in the affidavit she filed in opposition to Lawyer's motion to dismiss. She also contends she provided the district court with an expert's report concluding there was no basis in law for excluding Krile as a witness and supporting her allegations of malice.

[¶26] We have already concluded the district court did not abuse its discretion by excluding matters outside the pleadings. Krile's affidavit was filed in opposition to Lawyer's renewed motion to dismiss and was not a document embraced by the pleadings. The expert's report also was not a document embraced by the pleadings. The district court did not consider Krile's affidavit or the expert's report.

[¶27] Because the communication is a qualifiedly privileged communication, Krile was required to allege actual malice to state a claim upon which relief can be granted. Krile alleged:

> [Lawyer's] statements were made without reasonable basis for believing them to be true, and for no common good or public purpose. [Lawyer's] *Giglio* conclusion was patently afoul of established guidance in the Burleigh County State's Attorney's Office and inconsistent with other "non-*Giglio*" determinations for much more severe conduct by other BPD officers. [Lawyer's] statements are malicious and false and/or made with a reckless or intentional disregard for the truth.
>
> Notwithstanding [Lawyer's] defamatory statements that [Krile] could no longer be used as a prosecutorial witness, since [Krile's] termination, prosecutors in multiple jurisdictions continue to subpoena [Krile] to testify against defendants in [Krile's] current capacity as loss prevention manager. Furthermore, not only have prosecutors continued to subpoena

9

[Krile] from other jurisdictions, but [Krile] has continued to receive subpoenas to testify from other prosecutors at the Burleigh County State's Attorney's Office—an exemplar that the [Lawyer's] statements are knowingly false.

. . . .

[Lawyer] forfeited any arguable qualified immunity when she acted in complete defiance to prevailing facts and maliciously, falsely stated evidence supported her position when in fact it ran against. Specifically, [Lawyer] asserted several reports supported [Lawyer's] theory that [Krile] was lying regarding arrests without backup, when in fact dispatch logs indicate otherwise, and one report was for a time when the [Krile] was not even working patrol. Additionally, [Lawyer] engaged in systemic confirmation bias throughout her investigation and wholly misapplied prevailing jurisprudence when issuing the *Giglio* letter to an officer who did not even serve in her governmental unit.

Krile's allegations consist of conclusory statements that Lawyer acted with malice.

[¶28] Under N.D.R.Civ.P. 8(a), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although a concise and non-technical complaint is all that is required by N.D.R.Civ.P. 8(a), a complaint nevertheless must be sufficient to inform and notify the adversary and the court of the pleader's claim." *Erickson v. Brown*, 2008 ND 57, ¶ 16, 747 N.W.2d 34. Rule 8 does not require the complaint to have detailed factual allegations, but allegations that are merely conclusory statements unsupported by factual allegations are not sufficient to state a cause of action. *See Brakke v. Rudnick*, 409 N.W.2d 326, 333 (N.D. 1987); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Well-pleaded factual allegations are entitled to an assumption of truth, but conclusions unsupported by factual allegations are not. *See Iqbal*, at 679.

[¶29] Rule 9(b), N.D.R.Civ.P., governing the pleading of special matters, states, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Although this provision of Rule 9 explicitly excuses a party alleging malice from the heightened pleading standard required for fraud or

mistake under Rule 9, the party is still required to comply with the requirements of Rule 8. *See Iqbal*, 556 U.S. at 687. "Rule 8 does not empower [a party] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

[¶30] Malice is not inferred from the communication or publication. N.D.C.C. § 14-02-05. Conclusory allegations are not sufficient. Krile alleged that Lawyer's statements were malicious and false and made with a reckless or intentional disregard for the truth. Krile's allegations of malice were conclusory and were not sufficient to allege actual malice. *Cf. Laguerre v. Maurice*, 138 N.Y.S.3d 123, 128 (N.Y. App. Div. 2020) (holding former church elder plaintiff sufficiently alleged malice to overcome the common-interest qualified privilege when complaint alleged plaintiff had a disagreement with pastor defendant, defendant stated he would "crumble" plaintiff if plaintiff "did not submit to him," and defendant stated he would make false statements against plaintiff and have church membership vote to relieve plaintiff of his responsibilities at the church).

[¶31] Because Krile did not support her claim with factual allegations that Lawyer acted with actual malice, we are unable to discern a potential for proof to support her defamation claim related to the publication of the *Giglio* letter to Chief Donlin. Construing the complaint in the light most favorable to Krile and accepting well-pleaded allegations as true, Krile failed to allege a legally sufficient claim. We conclude the district court did not err by dismissing Krile's defamation claim related to the publication of the *Giglio* letter to Chief Donlin.

B

[¶32] The district court also dismissed Krile's claim related to the publication of the *Giglio* letter to Chief Gibbs. The court stated Krile's complaint alleged she was not hired by the Lincoln Police Department after it received the *Giglio* letter, but she later admitted she was eventually hired by the Lincoln Police Department, and the court concluded she therefore failed to state a claim. The court also explained the result would be the same even if the complaint had been amended to allege Krile was not initially hired by the Lincoln Police

11

Department and suffered damages during the delay in her hiring, because the same analysis that applied to the communication with Chief Donlin would apply to the communication with Chief Gibbs and the communication was protected by qualified privilege.

[¶33] The attending circumstances of the communication to Chief Gibbs were not disputed. Chief Gibbs was deciding whether to hire Krile as an officer in the Lincoln Police Department. The City of Lincoln is also located in Burleigh County and Chief Gibbs had an interest in Lawyer's decision to *Giglio* impair Krile and the reasoning for the decision. The communication was one that was made by a person interested in the subject matter to another person who was also interested in the subject matter. The communication was entitled to a qualified privilege.

[¶34] Krile did not allege any additional facts in support of her conclusory allegation of malice for Lawyer's communication to Chief Gibbs. We therefore conclude Krile did not make sufficient factual allegations to allege malice. Construing the complaint in the light most favorable to Krile and accepting all well-pleaded allegations as true, she failed to allege a legally sufficient claim. We conclude the district court did not err by dismissing Krile's defamation claim related to the publication of the *Giglio* letter to Chief Gibbs.

IV

[¶35] We affirm the judgment.

[¶36] Daniel J. Crothers, Acting C.J.
    Gerald W. VandeWalle
    Lisa Fair McEvers
    Jerod E. Tufte
    Lee A. Christofferson, S.J.

[¶37] The Honorable Lee A. Christofferson, S.J., sitting in place of Jensen, C.J., disqualified.