# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 207

Bismarck Financial Group, LLC; Gary Berube,
in his capacity as a Member of Bismarck
Financial Group, LLC; Doug Buehler, in his
capacity as a Member of Bismarck Financial
Group, LLC; Bob Johnson, in his capacity
as a Member of Bismarck Financial Group,
LLC; Matt Puetz, in his capacity as a
Member of Bismarck Financial Group, LLC;
and Larry Souther, in his capacity as a
member of Bismarck Financial Group, LLC,                    Plaintiffs and Appellants

      v.

James "Jay" Caldwell,                                       Defendant and Appellee

### No. 20200005

Appeal from the District Court of Burleigh County, South Central Judicial
District, the Honorable David E. Reich, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Randall J. Bakke (argued), Shawn A. Grinolds (on brief), Bradley N.
Wiederholt (on brief), Bismarck, ND, for plaintiffs and appellants.

Cory D. Olson (argued) and Philip J. Kaplan (on brief), Minneapolis, MN, for
defendant and appellee.

# Bismarck Financial Group v. Caldwell
## No. 20200005

**McEvers, Justice.**

[¶1]   Bismarck Financial Group, LLC, and its individual members (together "BFG") appeal from an order granting James Caldwell's Rule 12(b)(6) motion to dismiss their complaint.  The district court assumed for purposes of the motion that Caldwell wrongfully dissociated from the company, but the court dismissed the complaint concluding Caldwell could not be held liable for future company expenses and obligations as a matter of law.  We affirm in part, reverse in part, and remand.

I

[¶2]   According to BFG's complaint, Bismarck Financial Group, LLC, was formed in 2009 as a limited liability company organized under N.D.C.C. ch. 10-32.1.  Caldwell purchased a former member's interest in 2015.  After Caldwell became a member, the parties executed various governing documents, including an operating agreement, which BFG attached to its complaint.  While Caldwell was a member, the company entered into a 10-year office lease.  The company also had, and continues to have, one salaried employee.

[¶3]   In 2019, Caldwell informed the other members he was dissociating from the company.  BFG subsequently brought this lawsuit requesting a declaration that Caldwell's dissociation was wrongful and damages in excess of $137,879.55 based on Caldwell's pro rata share of the company's debt obligations, employee salary, office overhead, and other expenses.

[¶4]   Caldwell moved to dismiss for failure to state a claim upon which relief could be granted.  Caldwell argued that he could not be held personally liable for company expenses and obligations under principles of corporate law.  Caldwell also asserted BFG had not incurred any damages caused by his dissociation because, according to the terms of the operating agreement, the members have no obligation to contribute capital to cover company expenditures.  The district court granted Caldwell's motion.  The court assumed Caldwell wrongfully dissociated from the company, but concluded

1

BFG had not pleaded a cognizable claim for damages because Caldwell could not be held liable for future company expenses and obligations.

## II

[¶5] A motion to dismiss under N.D.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claims presented in the complaint. *Estate of Nelson,* 2015 ND 122, ¶ 5, 863 N.W.2d 521. This Court reviews appeals from N.D.R.Civ.P. 12(b)(6) dismissals de novo and only affirms when it cannot discern a potential for proof to support the claims in the complaint. *Brandvold v. Lewis & Clark Pub. Sch. Dist. No. 161*, 2011 ND 185, ¶ 6, 803 N.W.2d 827. The Court must construe the complaint "in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint." *Hale v. State*, 2012 ND 148, ¶ 13, 818 N.W.2d 684 (quoting *Ziegelmann v. DaimlerChrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556).

> "The purpose of a Rule 12(b)(v) motion is to test the legal sufficiency of the statement of the claim presented in the complaint." *Towne v. Dinius*, 1997 ND 125, ¶ 7, 565 N.W.2d 762. A court's scrutiny of pleadings should be deferential to the plaintiff, unless it is clear there are no provable facts entitling the plaintiff to relief. *Wells [v. First Am. Bank W.]*, 1999 ND 170, ¶ 7, 598 N.W.2d 834. "Because determinations on the merits are generally preferred to dismissal on the pleadings, Rule 12(b)(v)[1] motions are viewed with disfavor." *Towne*, at ¶ 7. A complaint should not be dismissed under N.D.R.Civ.P. 12(b)(v) for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnson & Maxwell, Ltd. v. Lind*, 288 N.W.2d 763, 765 (N.D. 1980).
>
>> The complaint is to be construed in the light most favorable to the plaintiff, and the allegations of the complaint are taken as true. The motion for dismissal of the [complaint] should be granted only if it is disclosed with certainty the

---

[1]Effective March 1, 2011, a motion to dismiss for failure to state a claim upon which relief can be granted is provided under N.D.R.Civ.P. 12(b)(6).

> impossibility of proving a claim upon which relief can be granted. *Id.* (citations omitted).

*Rose v. United Equitable Ins. Co.*, 2001 ND 154, ¶ 10, 632 N.W.2d 429.

[¶6] A limited liability company combines the tax advantages and capital structure of a partnership with the limited liability and governance structure of a corporation. *See Addy v. Myers*, 2000 ND 165, ¶ 10, 616 N.W.2d 359 (discussing purposes of a limited liability company under N.D.C.C. ch. 10-32). Members of a limited liability company have limited liability like a corporate shareholder and are not generally exposed to personal liability for the entity's debts unless there are personal guarantees. *Id.* Under the current version of the Uniform Limited Liability Company Act, N.D.C.C. § 10-32.1-47(3), provides for damages caused by a member's wrongful dissociation from a limited liability company:

> A person that wrongfully dissociates as a member is liable to the limited liability company and . . . to the other members for damages caused by the dissociation. The liability is in addition to any other debt, obligation, or other liability of the member to the company or the other members.

In addition, N.D.C.C. § 10-32.1-49(2) states that a member's dissociation does not discharge the member from "any debt, obligation, or other liability to the company or the other members that the person incurred while a member."

## A

[¶7] BFG's complaint seeks to hold Caldwell liable for rent he "remains responsible to pay;" net losses for which he "is legally obligated to pay his pro rata share;" general office overhead expenses he "remains obligated to pay BFG a 1/6th share of;" and employee salary he "is also obligated to pay."

[¶8] BFG specifically relies on Section 3.03 of the operating agreement to support its claims. Section 3.03 states: "Net Income and Net Losses shall be allocated annually among the Members based on their Percentage Interests." BFG asserts company expenditures qualify as "Net Losses." In BFG's words: "In addition to Lease Rents, net losses include but are not limited to general

3

office overhead expenses of BFG related to the Lease as well as other common business overhead."

[¶9] "An operating agreement is a contract." Unif. Ltd. Liab. Act (amended 2013) § 102(13) cmt. (Unif. Law Comm'n. 2006). Matters of contractual interpretation present questions of law that are fully reviewable on appeal. *Bendish v. Castillo*, 2012 ND 30, ¶ 16, 812 N.W.2d 398. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02.

[¶10] The operating agreement defines "Net Losses" and "Net Income" as "the profits and losses of the Company, as the case may be, as determined for federal income tax purposes as of the close of each of the fiscal years of the Company." Although company expenditures may be considered in determining whether BFG has a net loss or net profit at the end of the year, "as the case may be," the expenses themselves clearly do not constitute "Net Losses" because they exist regardless of whether the company had an annual loss or profit. We conclude Section 3.03 does not create an obligation for members to cover company expenditures. Thus, BFG's claim that, under this provision, Caldwell is obligated to pay a share of company rent, operating expenses, and employee salary fails as a matter of law.

B

[¶11] BFG also argues Caldwell's wrongful dissociation injured each member by increasing their proportionate obligation to contribute capital to fund the company. However, Section 3.08 of the operating agreement clearly states members are not required to contribute capital:

> No Member shall have any obligation to make additional capital contributions to the Company or to fund, advance, or loan monies which may be necessary to pay deficits, if any, incurred by the Company during the term hereof.

Because the members have no obligation to contribute capital to cover company deficits, it cannot be said Caldwell's dissociation caused the remaining members injury in the form of increased contribution obligations. Each

member's proportionate obligation to contribute capital remains the same before and after Caldwell's dissociation—there is none. BFG's argument thus fails as a matter of law.

C

[¶12] BFG also asserts relief under the Uniform Limited Liability Company Act is not dependent upon any contractual obligation owed by Caldwell. BFG argues it is "statutorily entitled" to any damages caused by Caldwell's dissociation.

[¶13] In its dismissal order, the district court noted BFG did not specify any damages other than those purportedly arising under the operating agreement—"[f]or example, Plaintiffs do not allege that, as a result of Caldwell's dissociation, Bismarck Financial has lost a business opportunity or been forced to pay higher rent." However, BFG's complaint alleges: "Caldwell's monetary obligation to his fellow BFG members is likely to increase in the future and is likely to include *other obligations and other dollar amounts not currently identifiable.* Plaintiffs reserve their right to present evidence in this case of such additional obligations and dollar amounts." (Emphasis added.)

[¶14] All that is required under N.D.R.Civ.P. 8(a)(1) and (2) is: "(1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for the relief sought, which may include relief in the alternative or different types of relief." BFG's allegation that Caldwell's withdrawal caused additional, currently-unidentifiable damages, if proven, is sufficient to support recovery against Caldwell. *See* N.D.C.C. § 10-32.1-47(3) (wrongfully dissociating members are liable "for damages caused by the dissociation"). We conclude the district court erred when it dismissed BFG's complaint as a matter of law in its entirety.

## III

[¶15] We affirm the dismissal order in part, reverse in part, and remand for further proceedings.

[¶16] Lisa Fair McEvers
     Gerald W. VandeWalle
     Jerod E. Tufte
     Daniel J. Crothers
     Jon J. Jensen, C.J.